Lee Gauntt, Plaintiff. Lillie Gauntt et al., Substituted as Parties Plaintiff-Appellees, v. Herbert Ivie and Beltone Hearing Service (Herbert Ivie, Agent) Defendants. Herbert Ivie, Defendant-Appellant.

Gen. No. 10,312.

Third District.

February 21, 1961.

Robert H. Mehrhoff, of Carrollton, for appellant.

No appearance, for appellees.

ROETH, JUSTICE.

Suit was brought by plaintiff against the defendant Ivie (operating under the trade name of Beltone Hearing Service) to cancel a certain contract made between the parties and for the return of money paid to defendant as down payment on the contract. Defendant filed a counterclaim for the balance due under the contract and a trial by jury resulted in judgment for the plaintiff on both the complaint and counterclaim. Subsequent to filing the notice of appeal, plaintiff died and on motion suggesting death

of the plaintiff his heirs at law were made party plaintiffs for the purpose of the appeal. Notwithstanding his death, we will continue to refer to the deceased as plaintiff in this opinion. The abstract of the proceedings was waived and the substituted plaintiffs did not file briefs.

In August of 1958 plaintiff purchased two hearing aids from defendant on conditional sales contract, agreeing to pay $615.94 at the rate of $215.94 down and the balance in 17 installments of $24.88 each. Subsequently plaintiff refused to pay any of the installments because as claimed, they did not improve his hearing. These hearing aids were to allegedly enable plaintiff to hear the squirrels bark, the quail call, the birds sing and people talk over the radio, which they allegedly did not do. Defendant took the hearing aids from him. The evidence indicates that defendant at the time he took back the hearing aids desired to check them and return them to plaintiff, who advised him that he would not accept them under any circumstances and demanded that his down payment be returned. Defendant, however, did not at any time thereafter make any effort to return the hearing aids.

The complaint was in two counts alleging in substance the purchase by the plaintiff, the down payment, the execution of a conditional sales contract, the fact that the plaintiff advised the defendant that the aids were not improving his hearing, that the defendant then took possession of the hearing aids for the purpose of making adjustment and did not return them, that plaintiff demanded cancellation of the agreement and return of his down payment and that "the said defendant warranted the hearing aid to improve the hearing of the plaintiff". It appears that plaintiff was relying on an express warranty. Count 2 of the complaint alleged in substance the same as

188

Count 1. In answer the defendant admitted all allegations of both counts excepting the warranty and the allegation that the hearing aid did not improve plaintiff's hearing and that the plaintiff advised him of that circumstance. By way of counterclaim the defendant alleged the execution of the conditional sales contract and attached a copy of the same to the complaint; that the plaintiff had not made the monthly payments per the agreement; an election to sue for the balance due under the terms of that contract; that defendant has in his possession the hearing aids; that they perform and function perfectly in all mechanical respects and that the attempted return of the hearing aids after the re-taking would have been futile. Plaintiff's answer does no more than set up the issue of defendant's right to sue for the balance due under the contract, realleges the warranty and denies the fitness of the hearing aids. The conditional sales contract in printed form contains no warranties. It is entitled "Customer's Purchase Agreement" with the name of the manufacturer of the product printed on the form and the stamp of the defendant also appearing thereon. It recites that, "The undersigned dealer (hereinafter called 'seller') hereby sells, and the undersigned purchaser (hereinafter called 'purchaser') hereby purchases and acknowledges receipt of the hearing aid and accessories (hereinafter called 'hearing aid') described below at the price herein set forth, subject to the terms and conditions outlined below:" There follows a description of the model and serial number and further description of the merchandise, the price and the tax. Written above the description are the words "conditional Sales Contract". There follows a place for the signature of the purchaser, his address, and a breakdown of the balance due, carrying charges and the amount to be financed. After this appears the agreement as to the number of payments, amount of pay-

ments and the time payments are to be made. The following paragraphs of the agreement recite the retention of title in the seller until payment is made in full, a confession clause and a warrant of attorney to confess judgment, notice of intended assignment and other matters not important to this proceeding. The contract also recites:

> "Time is of the essence of this agreement, and if the holder hereof deems himself insecure, for any reason, or if the purchaser fails to make any of said monthly installment payments as above specified, all remaining installments may be declared immediately due and payable by the holder hereof, and in the event of non-payment the purchaser agrees on demand to return the said hearing aid to the holder hereof and the holder hereof may, without notice or demand and without legal process, enter in any premises and take possession of said hearing aid and make such disposition thereof as may be deemed desirable, and all payments made shall be retained as liquidated damages for use of said hearing aid, or said hearing aid may be sold, with or without notice, at public or private sale, and the proceeds thereof, less expenses, credited on the amount unpaid, and in either event, as liquidated damages for the breach of the contract, purchaser agrees to pay any deficiency, plus 15% thereof for attorney's fees incurred in collecting any sums hereunder, and not paid at maturity, and waiver of any default shall not operate as a waiver of successive defaults."

The contract also recites that all rights and remedies hereunder are cumulative and not alternative. At the bottom of the page just above the place for

190

the signature of the parties to the contract, plaintiff being required to sign the same in two places, appear the words in bold type:

"It is understood and agreed that no other agreement, guaranty or warranty, verbal or written, express or implied, shall limit or qualify the terms of this contract . . ."

This type of provision is commonly referred to as a merger clause.

Defendant filed a motion for judgment on the pleadings principally upon the ground that the last quoted provision of the contract precluded any claim of warranty by plaintiff. This motion was denied. After the jury had returned its verdict defendant filed a motion alleging that the court erred in denying its motion for judgment on the pleadings and other matters not deemed important in our consideration of this case.

It is clear that no warranties were contained in the contract and it is the opinion of this court that the complaint is predicated purely and simply upon a breach of warranty. Because of our view of this matter, as will be hereinafter set out, it is immaterial whether that allegation is one of an express warranty or an implied warranty. The pleadings themselves seem to favor the theory of an express warranty.

■ We are of the opinion that the court erred in failing to dismiss the complaint and grant to the defendant a judgment insofar as the complaint is concerned. The complaint does not allege fraud nor does it allege reliance by the plaintiff on any of the warranties allegedly made by the defendant. The merger clause in the contract excluded implied warranties as well as express warranties. Sterling-Midland Coal Co. v. The Great Lakes Coal and Coke Co., 334 Ill. 281, 165 N. E. 793; Heller v. Franklin-Butler Motors,

Inc., 259 Ill. App. 358. In the Sterling-Midland Coal Company v. The Great Lakes Coal and Coke Co. case, supra, the court said:

"All contracts are presumed to have been entered into, not only with reference to the general customs and usages of the trade, but with reference to the provisions of the statutory law applicable thereto, and, when not negatived it must be held that it is one of the understandings of the parties to the contract for sale that sections 15 and 16 of the Uniform Sales Act will apply. The clause of the contract just quoted not only negatives the fact that there are any contemporaneous parol understandings or agreements existing between the parties relative to the contract, but also expressly negatives the fact that there are any understandings, whether arising by implication of law or otherwise, between the parties, as to the subject-matter of the contract . . ."

The clause referred to by the Supreme Court was a merger clause not unlike the one here under consideration.

██ The court there also approved the following statement of the general rule:

"The Uniform Sales Act is not intended to be a restriction upon the rights of parties to contract. It is simply a statement of the rules applicable in the construction of such contracts as may be made. It does not contract for the parties; it measures their rights under the contracts they themselves make. It does not purport to create a mold in which all such contracts must be cast. There is nothing contained within its provisions which can be said to prohibit the inclusion of any lawful term that the parties may desire in a contract for sale, nor is there anything

192

therein contained which can be said to avoid any lawful term or provision that may be thus mutually agreed upon."

■ Section 71 of the Sales Act, Chap. 121½, Section 71, Smith Hurd Ill. Rev. St. 1959, expressly provides:

"Where any right, duty or liability would arise under a contract to sell or a sale by implication of law, it may be negatived or varied by express agreement or by the course of dealing between the parties, or by custom, if the custom be such as to bind both parties to the contract or the sale."

The complaint does not allege usage or custom but merely an express warranty. Nor does the complaint allege that the plaintiff did not read nor did not understand the contract he signed. Under these circumstances it would appear that the complaint wholly fails to state a cause of action.

■ Defendant asks the court not only to reverse the judgment of the trial court but also asks for judgment on his counterclaim for the balance due. We do not agree that he is entitled to judgment on his counterclaim.

From all that appears of record, the defendant treated repossession and retention of the merchandise as satisfaction of the contract, retaining the down payment as liquidated damages for the use of the same. No attempt was made to resell the merchandise, although defendant admits the merchandise was in good working order, nor did he make any offer to return the merchandise to the plaintiff either prior to or at the time of the trial. Attention is called to a matter not raised by either of the parties and apparently not even suggested in the trial court. At the time of this transaction the Retail Installment

193

Sales Act was in effect, having been added to Chap. 121½ in 1957 and taking effect on the 1st day of January, 1958. Chap. 121½, Sections 223–253, Ill. Rev. Stat. 1959. In Sec. 223 the Act provides as follows:

> "In this Act, unless the context or subject matter otherwise requires: . . .
>
> " 'Retail instrument contract' or 'contract' means and includes any agreement, negotiated or entered into in this state, including a chattel mortgage, conditional sales contract, . . ."

The Act further recognizes that each installment sales contract shall contain certain agreements and notices to the buyer and the contract in the case at bar falls far short of the provisions set out in that Act. The failure, however, of the contract to comply with the Act is not fatal for the reason that the issue was never raised in the lower court and we have nothing before us to rule upon except defendant's right to recover the unpaid balance due on the purchase price. The Act prescribes certain notice to be given in the event of repossession and the manner in which such repossession is to be made. Section 247 then states as follows:

> "If the holder retakes the goods pursuant to Section 22 (Sec. 245 of Chap. 121½) or if the buyer fails to exercise his right of redemption pursuant to Section 22, the holder may retain the goods or at his election resell the goods at public or private sale. If the holder does not resell the goods within a reasonable time after retaking, he shall be deemed to have elected to retain the goods and release the buyer from any further obligations under the contract."

Under the circumstances in the case at bar it must be said that the defendant made his election by his failure to resell the merchandise within a reasonable

194

time and is not entitled to recover the balance due. He released the buyer from all obligations under the contract and those obligations include the right to recover attorney's fees in an action.

For the reasons stated herein the judgment of the lower court for the plaintiff on the complaint is reversed and judgment for the plaintiff on the counterclaim is affirmed.

Reversed in part and affirmed in part.

CARROLL, PRESIDING JUSTICE, and REYNOLDS, JUSTICE, concur.